## Glass, et al. v. Cincinnati Tobacco Warehouse Co.

(Decided February 28, 1911.)

### Appeal from Carter Circuit Court.

1.  Mrs. G., a married woman, borrowed $500 from a warehouse company, and mortgaged a crop of tobacco to secure same. Her husband handled the tobacco for her as her agent, and claims to have shipped it to the warehouse. This the company denies. In a controversy between the warehouse and Mrs. G., it developed that her husband had an arrangement with the warehouse by which it furnished him with the money to buy leaf tobacco in the country, which, when prized, was to be shipped to the warehouse and sold, and the proceeds, less expenses, placed to his credit. Under this arrangement, during the season following the execution of the

note by Mrs. G., the warehouse paid, on his drafts, for something more than 100,000 lbs. of tobacco. It received from him about 88,000 lbs. He claims that his wife's tobacco was included in this 88,000 lbs. No notice was ever given the warehouse, either by Mrs. G. or her husband, that her tobacco had been shipped to it; and the tobacco received by the warehouse was so marked as to lead to the belief that it was the tobacco which had been purchased by her husband and paid for by the warehouse. It is doubtful, under the proof, if her tobacco was ever shipped to the warehouse; but if it was, it is apparent that her husband, who was her agent and whom she permitted to control it, used the proceeds of its sale to extend his credit rather than to extinguish her debt. Under this state of facts, even if the tobacco was shipped to and received by the warehouse, the mortgage debt was not satisfied.

2. Where property is entrusted to an agent for sale, and he, in violation of the trust reposed in him, after selling the property, misapplies or misappropriates the proceeds to his own use, he, and not the purchaser of the property, is answerable to his principal, unless the purchaser knew that it was placed in his hands for a particular purpose.

THEOBALD & THEOBALD for appellants.

G. W. E. WOLFFORD for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

On October 6, 1904, J. W. Glass and Pattie Glass, residents of Carter county, Kentucky, borrowed from the Cincinnati Warehouse Company $500, and executed a chattel mortgage upon a crop of tobacco supposed to contain about ten thousand pounds to secure same. J. W. Glass had theretofore been purchasing tobacco in the country and prizing it and shipping it to the Cincinnati Warehouse Company upon a contract, by the terms of which, after the payment to the warehouse company of certain fees, insurance and expenses, he received all the profit or made good any loss that arose out of the several purchases made by him. Out of his first year's venture he had made money. About the time this loan was made, he arranged with the Warehouse Company to buy tobacco during the following season upon the same terms. Under this arrangement he bought, and the Company advanced him money to pay for, more than a hundred thousand pounds of tobacco in the country, and he shipped to the warehouse eighty-two hogsheads of tobacco, weighing something over eighty-eight thousand pounds.

These were sold and the net proceeds placed to his credit. The result of this last purchase was a net loss to him of about $2,000. The note remaining unpaid, the Warehouse Company brought suit in the Carter Circuit Court to enforce its collection. Glass and his wife answered, and pleaded that the note had been paid by the shipment to the Warehouse Company of the tobacco which was pledged to secure it; that the tobacco which was pledged to secure this note was the property of Pattie Glass, wife of J. W. Glass, and that it was reasonably worth $1,000; and she sought to recover a judgment over and against the Warehouse Company for this $1,000, less her note, with interest thereon, to the date of the shipment. Glass pleaded that he had bought and shipped a large amount of tobacco to the Warehouse Company, but that he kept no accounts, and that the Company had failed to furnish him with a statement of accounts, and he asked that the accounts between them be settled and for a judgment for any sum that might be found due him upon a final settlement. The Warehouse Company, in its reply, denied that it had received any tobacco whatever from the defendant Pattie Glass, or for her account, or that the note, or any part thereof, had been paid. It denied that it owed J. W. Glass any sum whatever, but pleaded that, upon a settlement of their account, he was indebted to it in the sum of $2,455.56. The affirmative matter in this reply was traversed of record, and upon motion the case was transferred to equity and referred to the master to hear such proof as was offered by the respective parties in support of their contentions. The master took proof and reported the evidence in writing, together with his findings. Upon the pleadings, proof, report and exceptions filed thereto, the case was submitted for judgment. The Chancellor found in favor of plaintiff on the $500 note sued on, and dismissed the claims of both Pattie Glass and the Warehouse Company upon their open accounts. From that finding and judgment this appeal is prosecuted.

The proof shows conclusively that appellee furnished the money to J. W. Glass to pay for 103,445 pounds of tobacco, and that he shipped to appellee 82 hogsheads of tobacco, weighing 88,320, and that appellee, on this tobacco sold, received $1,906.91 less than it paid out for appellant J. W. Glass in its purchase, and this $1,906.91, together

with $548.55 interest, is the amount which it sought to recover on its counter-claim. This shortage or difference between the number of pounds paid for by appellee for appellant, amounting to more than 15,000 pounds, is wholly unexplained in the record, although appellant testifies that he shipped this tobacco purchased in the country to appellee, and in addition some 10,000 to 20,000 pounds which was paid for by his wife, making in the neighborhood of twenty hogsheads additional.

The great difficulty with appellant's case is that he is trying to speak from memory about transactions that took place four or five years prior thereto, and was unable to give anything like an accurate statement as to what he had done. All of the tobacco which he bought in the country and shipped was shipped in his name, and the Warehouse Company never received any notice from him or his wife that her tobacco had been shipped, or that she was laying any claim to any of it, or was demanding or looking to the Company for pay for any part thereof. In this particular the conduct of appellant and his wife rather supports the contention of appellee to the effect that the note has not been paid. All of the other tobacco which appellant bought in the country he paid for by drafts drawn on appellee. We see no reason why he should have made an exception in favor of his wife. When he bought her tobacco, if he did so, he should have paid her as he did anyone else, and if, as he claims, the $500 debt was her debt, he should have deducted this amount and drawn a draft on appellee for the amount of her tobacco less the amount of her note. Instead of doing this, however, he made no mention of the fact that he was shipping her tobacco to appellee, and, in the light of the positive testimony of the president of appellee company to the contrary, we must hold that the record fails to show that the tobacco covered by the mortgage was shipped to appellee at all.

But if we were mistaken in this, and the tobacco claimed by appellant Pattie Glass did in fact constitute a part of the consignment by J. W. Glass to appellee, she would be in no better position, for neither she nor her husband at any time notified the appellee that her tobacco was included in such consignment. Her husband had the handling of her tobacco, and if he used it to extend his credit rather than extinguish her debt, he, and not appellee,

is to blame. But in the light of the evidence that appellee company furnished the money to pay for more than a hundred and three thousand pounds of tobacco in the country for appellant J. W. Glass, and received but about eighty-eight thousand pounds of it, the conclusion cannot be escaped that J. W. Glass either failed to ship a part of this purchase to appellee, or else did not ship his wife's tobacco to appellee. For, while there would naturally be some loss or shrinkage in weight in re-handling the tobacco, the shortage reported here is entirely too large to be accounted for in this way. We are of opinion that the proof in this case fully warranted the trial judge in holding that the note in question had not been paid, and his judgment to this effect is affirmed.